**The STATE of Texas, Appellant,**

v.

**Christopher Michael BRIDGES, Appellee.**

**No. 14–96–01417–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 5, 1998.

Rehearing Overruled Oct. 15, 1998.

R. Scott Shearer, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

FOWLER, Justice.

Appellant, the State of Texas ("State") appeals a pretrial motion to suppress evidence [1] in the action against Christopher Bridges ("Bridges") for possession of cocaine, weighing at least 400 grams, with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (Vernon Supp.1998). We reverse the trial court ruling and remand the cause for further proceedings consistent with this opinion.

## THE CONTROVERSY

On December 7, 1995, Houston Police Department Officer Robert Reinhardt ("Reinhardt") received a telephone call from a confidential informant ("CI"). This informant was a maintenance man at a Motel 6 on Airport Boulevard. The informant told Re-

---

1. *See* TEX.CODE CRIM. PROC. ANN. Art. 44.01(a)(5) (Vernon Supp.1998) (providing the State an appeal when the trial court grants a motion to suppress evidence).

inhardt some drugs were in room 321. Reinhardt and his squad went to the motel and set up surveillance on the room. While at the hotel, Reinhardt spoke to both the CI and the motel manager and determined room 321 was registered to Christopher Bridges. According to the motel manager, a maid had seen some illegal drugs in Bridges' room. The maid notified the motel manager who went to the room and also saw the illegal drugs. The motel manager alerted the CI to the situation, and the CI telephoned Reinhardt.

At this point in time, Reinhardt did not feel enough probable cause existed for him to successfully obtain a search warrant. Instead, he decided to watch the room and to stop its occupant in the hallway and ask for a consent search. After an hour of surveillance, Reinhardt observed several individuals walking towards room 321.[2] The CI identified one of these individuals as Bridges, the occupant of the room. As the police approached, the individuals ran in the opposite direction. Despite an intense search, none of these individuals could be found.

During the chase, no police officer watched room 321. Reinhardt, therefore, decided to double back and "secure" the room. Obtaining the key from the CI, Reinhardt entered the room. Walking through the room, Reinhardt noticed a bag sticking out from behind the dresser. In an effort to determine what was inside the bag, Reinhardt moved the dresser back and pulled back the top of the bag. He discovered the bag held crack cocaine. Reinhardt then placed a guard on the room while he obtained a search warrant. A magistrate issued a search warrant, but the trial court suppressed all evidence seized under that warrant.

## STANDARD OF REVIEW

■ In reviewing a trial court's ruling, an appellate court must determine the applicable standard of review. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.

1997). "The amount of deference a reviewing court affords to a trial court's ruling on a 'mixed question of law and fact' (such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue." *Id.* If the issue involves a witness' credibility and demeanor, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* However, if the issue is whether an officer had probable cause, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* "In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The reason for this rule is that " 'probable cause and reasonable suspicion acquire content only through application.' " *Id.*

## DISCUSSION AND HOLDING

■ In one point of error, the State contends the trial court erred in granting Bridges' motion to suppress evidence.[3] After reviewing the reporter's record, we believe the trial court allowed Reinhardt's warrantless search of room 321 to obscure the issue of whether sufficient probable cause existed for the magistrate to issue a search warrant for that room. "Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Cassias v. State,* 719 S.W.2d 585, 587 (Tex.Crim.App.1986). Based upon Reinhardt's affidavit and his testimony at the suppression hearing, we believe sufficient

---

2. In his search warrant affidavit, Reinhardt stated two individuals approached room 321, but at the suppression hearing, he stated three or four individuals approached the room.

3. The State specifically contends "[t]he trial court erred by granting the defendant's motion to suppress evidence seized pursuant to the search warrant, because the warrant was validly based upon the motel manager's statement that cocaine was present in room 321."

probable cause existed for a magistrate to issue a search warrant *before* Reinhardt entered room 321.

■ In his affidavit for a search warrant, Reinhardt writes:

I, R. Reinhardt, a Houston Police Officer, presently assigned to the Narcotics Division, do solemnly swear that I have reason to believe that controlled substances, including, but not limited to, Crack Cocaine, are currently located within a residence known as 8800 Airport, room 321, Houston, Harris County, Texas.

Said residence known as 880[sic] Airport, number 321, is more particularly described as a three story brick motel, light brown in color. The motel sits on the south side of Airport street just west of Hansen street. Room 321 is located on the third floor of the motel and faces east. There is only one entry/exit door to the motel room and it also faces east and is brown in color. There is a 6' wooden fence which runs along the south and west side of the motel. The numbers 321 are posted in the upper center of the entry/exit door to the motel room.

Said residence is under the care, custody and control of a person known as Christopher Michael Bridges, a black male, with a date of birth 12–12–73, Texas DL# 16223973, with black hair and brown eyes. Christopher Michael Bridges is approximately 5'10" tall and weighs approximately 155 pounds.

## AFFIANT'S BELIEF IS BASED ON THE FOLLOWING INFORMATION:

Within the past 24 hours your affiant personally spoke to a credible and reliable source, H.M. Hoss Kazeroonian, the motel manager for Motel 6, 8800 Airport. Officers conducted a brief background check on Mr. Kazeroonian and found him to be reputably employed with outstanding references and no criminal history.

Mr. Kazeroonian stated to your affiant that on December 7, 1995, at approximately 1600 hours he was contacted by a maid at the motel who was cleaning room 321 as required by motel policy. The maid, who will remain unnamed throughout this warrant for personal safety reasons, told

Mr. Kazeroonian that while in room number 321 the maid observed marijuana and crack cocaine in plain view on the dresser area. With this information, Mr. Kazeroonian, as motel manager and under motel policy, went to room 321 and personally observed the marijuana and crack cocaine. Mr. Kazeroonian told your affiant that at this time he immediately left the room and contacted your affiant through a third party. The third party is a confidential informant (CI) for the Houston Police Department Narcotics Division. Your affiant, after being made aware of the narcotics that were observed inside the room, along with other members of the Houston Police Departments Narcotic Division, set up surveillance on the location.

Your affiant checked the motel registry and found room number 321 to be under the name of Christopher Michael Bridges. Your affiant checked Christopher Michael Bridges for criminal history and found him to have numerous arrests, including, but not limited to, narcotics violations.

At approximately, 2100 hours, your affiant observed two black males approach room 321 with one of the black males fitting the description of Christopher Michael Bridges. Your affiant, along with other members of the surveillance team approached the two males to interview them. At this time both black males fled the location, running on foot. At this time officers, for safety purposes secured room 321, as officers did not known [sic] if there were any other suspects inside the room. While securing the room, your affiant observed a large clear plastic bag sitting partially behind the dresser, but in plain view and open at the top, containing round white cookie shaped objects resembling crack cocaine.

Mr. Kozeroonian [sic] advised your affiant that through his numerous years in hotel/motel business and as his experience as a motel manager he can recognize marijuana and crack cocaine on sight.

Your affiant is a Houston Police officer assigned to the narcotics division. Your affiant has been a Houston Police Officer

for 17 years and assigned to the narcotics division for the past 5 years.

**WHEREFORE, PREMISES CONSIDERED, YOUR AFFIANT** respectfully requests that a warrant be issued authorizing your affiant or any other peace officer of Harris County, Texas, to search for and to seize any and all controlled substances, including but not limited to, Crack Cocaine.

We believe it is possible to exclude the paragraph in the affidavit concerning Reinhardt's entering the room and finding the drugs to corroborate the manager's statements and still have probable cause established—that the object of the search is probably on the premises at the time the warrant is issued—by the other facts submitted. The Texas Court of Criminal Appeals has stated that "the inclusion of tainted allegations in an affidavit does not necessarily render a resulting search warrant invalid." *Castillo v. State*, 818 S.W.2d 803, 805 (Tex.Crim.App. 1991); *see Brown v. State*, 605 S.W.2d 572, 577 (Tex.Crim.App.1980). The relevant inquiry into probable cause based upon a tainted affidavit is to put aside the tainted allegations and determine whether the independently acquired and lawful information clearly established probable cause. *See Castillo*, 818 S.W.2d at 805. If the search warrant could have been issued based on the untainted information in the affidavit, then the search warrant is valid. *See Brown*, 605 S.W.2d at 577.

■ By setting aside the affidavit's statements about Reinhardt's actions in room 321, we believe the independently acquired and lawful information obtained from the motel manager established probable cause. The information that both the maid and the motel manager viewed the illegal drugs in room 321 gave Reinhardt a reasonable trustworthy source that would allow him to believe the illegal drugs may be found in room 321.

Where facts and circumstances within the knowledge of a police officer, arising from

a reasonably trustworthy source, would warrant a man of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place.[4]

*Cassias*, 719 S.W.2d at 587. We, therefore, sustain the State's point of error.

Accordingly, we reverse the trial court's ruling and remand the case for further proceedings consistent with this opinion.

---

4. We recognize that Reinhardt did not believe he had enough probable cause to secure a search warrant. It is, however, not the officer's ultimate responsibility to determine whether probable cause exists, it is the magistrate's duty to make this legal determination based upon the facts the officer presents to the magistrate. *See* Tex.Code Crim. Proc Ann. Art. 18.01(b) (Vernon Supp.1998). So, Reinhardt's own belief as to whether probable cause existed does not control whether probable cause actually did exist.