Opinion issued December 17, 2009












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00827-CR




RAYMOND DOMINIC BRACKENS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1085228




O P I N I O N

          After the trial court denied his motion to suppress evidence, appellant,
Raymond Dominic Brackens, pleaded guilty to the offense of possession of child
pornography.


 Pursuant to appellant’s plea agreement with the State, the trial court
deferred adjudication of appellant’s guilt, placed him on community supervision for
five years, and imposed a fine of $500. In four issues, appellant contends that the
trial court erred in concluding that he had “failed to manifest a reasonable expectation
of privacy in his computer files,” the “warrantless search by law enforcement agents
beyond the scope of a private search was not per se unreasonable,” the “computer
technician had the authority to consent to the search of appellant’s computer,” and
article 38.23 of the Texas Code of Criminal Procedure was “inapplicable.”



          We affirm.
Factual and Procedural Background
          In his motion to suppress evidence, appellant asserted that, on July 26, 2006,
he took his laptop computer to a Circuit City store for “simple data migration” and
provided an external hard drive to effectuate this request. Appellant instructed
Circuit City to “backup all music, videos, and photos” under his profile “as well as
folder desktop files located on the desktop” and explained that he did not need
computer repairs because the computer was under warranty. He asserted that he “was
not informed and did not consent to the opening of any files in order to effectuate the
transfer of data from the computer hard drive to the external drive,” and, “with a data
transfer, there is no need to open files to make the transfer.” Appellant alleged that,
in violation of Circuit City’s policies, Mark Legg, a Circuit City computer technician,
opened and viewed appellant’s computer files containing child pornography and then
notified law enforcement authorities, who came to the Circuit City and examined and
seized the computer. Appellant contended that the evidence resulting from Legg’s
illegal breach of appellant’s computer security should be suppressed.
          At the hearing on the motion to suppress evidence, Legg testified that on July
30, 2006, he received a work order to perform a “data migration” on appellant’s
laptop computer. The work order contained instructions to “back up all music, video,
and photos” and desktop files from appellant’s laptop to an external hard drive. Legg,
who had not personally spoken with appellant, explained that, to perform the
requested data migration, he would have “normally hooked up the external hard drive
to the laptop and just copied it over.” However, because “the USB ports on the laptop
were non-functional,” he “had to copy it to a DVD” to ultimately load the files “into
the store computer which had the external hard drive connected to it.” While
performing the data migration as part of his “regular” job, Legg “came across the
folder” entitled “My Shared Folder” to download onto the DVD. Legg explained
that because the “My Shared Folder” was itself “too large to fit on a DVD,” he had
to open the folder and copy every file “individually.” As he was “selecting the files”
from the My Shared Folder and “dragging them to the DVD, [he] came across” a file
or files with a title that contained references to a “14 year-old’” and “Pedo,” which
Legg understood be short for pedofile or pedofilia. Legg’s concerns were also based
on the fact that the questionable file or files were linked to a program well known for
downloading pornography. Legg maintained that in order to carry out the customer’s
instructions to back up the music, videos, and photos, he had to open up the My
Shared Folder. 
          Legg further testified that because Circuit City store policy prohibited
employees from backing up “anything that might be illegal,” he opened the “14-year
old” or “Pedo” file to confirm that it was not illegal. When Legg double clicked on
the file, which was not password protected or locked, he saw an image of an adult
male having intercourse with an underage female child. Once Legg verified that this
file contained illegal data, he stopped what he was doing and informed his manager,
Israel Bautista. Legg noted that multiple other files in the My Shared Folder had
titles indicating that they also likely contained child pornography. 
          Legg agreed that it was Circuit City’s standard operating procedure to open
files during a data migration only if a file is of questionable content or “could have
something illegal in it” and, generally, files are not opened in this process. When
asked if Circuit City explained this policy to customers before it accepted their work,
Legg noted that Circuit City’s own work orders stated that the customer agreed to “all
policies.” Legg opined that although the specific policy described above was not on
the work order, it was the customers’ responsibility to make themselves aware of the
policies. Legg further agreed that appellant’s signature did not appear in the space
for the customer’s signature on the work order form. 
          After Legg informed his manager of his discovery, someone at the Circuit City
store notified the Houston Police Department (“HPD”), and a HPD patrol officer
came to the store. The patrol officer first asked Legg to open the file that Legg had
viewed and then asked Legg to “go through every video on the computer that could
be underage children.” Legg estimated that he opened nine additional files containing
child pornography for the police officer. 
          Bautista testified that after Legg had informed him that he had discovered a file
containing child pornography on appellant’s laptop, he contacted his service manager
and was instructed to notify law enforcement authorities and to quarantine the laptop. 
When the HPD patrol officer arrived, Bautista and Legg showed the patrol officer
where the files were located, and then the patrol officer asked them to play one of the
video files. Bautista recalled seeing an additional “two to three” of the video files
containing child pornography in the officer’s presence. Bautista explained that he,
Legg, and the patrol officer saw “quite a few” other file names indicating that they
also contained child pornography, but they only viewed “the first few of them.” 
          When asked about Circuit City’s privacy policies, Bautista stated that Circuit
City employees are not allowed to open a file or folder unless specifically instructed
by the customer. However, Bautista explained that Legg had not violated the policy
because Circuit City also had a policy prohibiting its employees from backing up
anything illegal and a technician would have to open a suspect file to confirm that it
was not illegal. If Legg had copied the suspect file without confirming that it was not
illegal, Legg would have been in violation of Circuit City policy. 
          HPD Officer Barnes testified that he was assigned to investigate the case on
July 31, 2006, the day after the HPD patrol officer had visited the Circuit City store. 
Barnes stated that, upon being assigned the case, he prepared a search warrant, which
stated,
On July 26, 2006, defendant brought his computer to Circuit City. This
was a laptop computer described as a Compaq Computer Model No:
V203US; Serial No: CNF4461126. Circuit City has the computer.
Defendant, Raymond Brackens, brought the computer in for Circuit City
to be fixed. Circuit City found numerous videos labeled “PEDO.” The
technician, Mark Leg [sic], stated that what he saw was at least 10
videos of female children ages ranging from 9-11 years old performing
oral and vaginal sex with adult males. The file name where the
pornographic images were observed were under the defendant’s name. 
The technician immediately called HPD to come view the computer. A
patrol officer came to Circuit City and viewed the pornographic images. 
After viewing the images, the patrol officer took custody of the
computer and put the computer in the HPD property room. The
computer is currently in custody of HPD. 
 
          After obtaining the warrant, Barnes took appellant’s laptop from the HPD
property room to another officer, a computer specialist, who conducted digital
forensic analysis of the laptop. The analysis revealed that the laptop contained
thirteen video files and two photo files containing child pornography. Eight of the
files containing child pornography were accessed on July 30, 2006, the date the first
HPD patrol officer visited the Circuit City store. An additional five files containing
child pornography had not been accessed on or after that date. Based upon this
analysis, Barnes concluded that, on July 30, 2006, the HPD officer who was first
called to the Circuit City store had viewed only some of the files containing child
pornography that were contained on appellant’s laptop.



          Kevin Jordan, a computer forensic analyst and appellant’s expert witness,
testified that he has never had to open files in performing data migrations. He also
stated that Barnes’s testimony regarding the dates that the files in question had been
accessed could be accurate “assuming that the file system’s time can be trusted and
there is nothing been done to modify the times purposefully.” 
          At the conclusion of the motion to suppress evidence hearing, the trial court
concluded that Legg “was not an agent of law enforcement, and that his viewing of
the file he testified to was a regular part of copying the data with regard to the data
migration.” It found that appellant consented to Legg performing “the data
migration” and Legg had to open the files to perform appellant’s work request. The
trial court denied appellant’s motion to suppress evidence on the ground that Legg
had violated “Texas Penal Code section 33.02[


] in opening the computer file.” After
appellant asked whether the trial court was denying his motion to suppress evidence
“on the basis of the warrantless search,” the trial court, citing Rogers v. State, 113
S.W.3d 452 (Tex. App.—San Antonio 2003, no pet.), responded, “I do.” The trial
court did not provide any further oral or written findings or conclusions, and the
parties did not ask for any additional findings or conclusions.  
Standard of Review
          We review a ruling on a motion to suppress for an abuse of discretion. 
Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost
total deference to a trial court’s determination of historical facts, especially if those
determinations turn on witness credibility or demeanor, and review de novo the trial
court’s application of the law to facts. Neal v. State, 256 S.W.3d 264, 281 (Tex.
Crim. App. 2008). At the suppression hearing, the trial court is the sole and exclusive
trier of fact and judge of the witnesses’ credibility. Maxwell v. State, 73 S.W.3d 278,
281 (Tex. Crim. App. 2002). Accordingly, the trial court may choose to believe or
to disbelieve all or any part of the witnesses’ testimony. State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000). Unless the trial court abuses its discretion by
making a finding unsupported by the record, we defer to the trial court’s findings of
fact and will not disturb them on appeal. Flores v. State, 177 S.W.3d 8, 13–14 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d). When the trial court fails to make
explicit findings of fact, we imply fact findings that support the trial court’s ruling so
long as the evidence supports these implied findings.


 Gutierrez v. State, 221 S.W.3d
680, 687 (Tex. Crim. App. 2007).
Motion to Suppress Evidence
          In four issues, appellant argues that the trial court erred in denying his motion
to suppress evidence because he “manifest[ed] a reasonable expectation of privacy
in his computer files,” the “warrantless search by law enforcement agents” went
beyond the scope of a private search and was “per se unreasonable,” Legg did not
have authority to consent to the search of appellant’s computer,” and Legg, by
opening appellant’s computer file, committed the offense of breach of computer
security. See Tex. Penal Code Ann. § 33.02 (Vernon 2003).  
          The Fourth Amendment of the United States Constitution and article I, section
9 of the Texas Constitution protect against unreasonable searches and seizures. U.S.
Const. amend. IV; Tex. Const. art. I, § 19; Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996). The well-established rule, subject to a few specifically
established and delineated exceptions, is that “searches conducted outside the judicial
process, without prior approval by judge or magistrate, are per se unreasonable under
the Fourth Amendment.” United States v. Ross, 456 U.S. 798, 825, 102 S. Ct. 2157,
2173 (1982) (citations omitted). The Fourth Amendment protection afforded to
closed computer files and hard drives is similar to the protection afforded to a
person’s closed containers and closed personal effects. United States v. Barth, 26 F. 
Supp. 2d 929, 936 (W.D. Tex. 1998). 
          In regard to appellant’s first issue, we note that one does not necessarily lose
one’s reasonable expectation of privacy in one’s closed computer files by handing
one’s computer over to a computer technician. See id. at 937. However, a private
party search can destroy an individual’s reasonable expectation of privacy if the
individual’s conduct or activity or the circumstances of the situation significantly
lessen the defendant’s reasonable expectation of privacy by creating a reasonably
foreseeable risk of intrusion by private parties. Id. In such a situation, any
subsequent law enforcement search must be limited in scope to the private party’s
legitimate search. Id. 
          Here, appellant took his laptop computer to a Circuit City store to have a
technician back up his video and photographic files onto an external hard drive. 
Appellant did not place any limitation on his request to back up these files, and the
USB ports on the laptop did not function. Legg testified that in order to fulfill
appellant’s request to migrate the data onto an external hard drive, he had to copy the
files in appellant’s My Shared Folder onto a DVD to ultimately load the files “into
the store computer which had the external hard drive connected to it.” Once he saw
the suspect name “Pedo” on one of the files, Legg had to open the file to confirm that
it was not illegal. We hold that, under these circumstances, appellant’s request to
back up his video and photographs, without any limitation on how to effectuate the
request, created a reasonably foreseeable risk of intrusion by Legg.


 See id.
Moreover, because Legg was a private party not acting as a “government actor” at the
time he opened the first file containing child pornography, the Fourth Amendment
was not implicated. Id. at 935. 
          We overrule appellant’s first issue.       
          However, in regard to appellant’s second issue, the Fourth Amendment and
article I, section 9 of the Texas Constitution were implicated when the HPD patrol
officer first arrived at the Circuit City store and, without a search warrant, asked Legg
to search further through appellant’s computer files and show him other images,
conduct that exceeded the scope of Legg’s initial private-party search. Id. at 937
(noting that subsequent police search must be “limited in scope to the private party’s
search”). Legg’s testimony reveals that, although he located and opened the first
pornographic image while performing a data migration using Circuit City’s standard
operating procedures, he immediately ceased the data migration upon confirming that
the laptop contained child pornography. Legg’s subsequent viewing of the videos
and images was done at the instruction of the HPD patrol officer. This warrantless
search was per se unreasonable under the Fourth Amendment and under article I,
section 9 of the Texas Constitution.


 Id.; see also Brimage v. State, 918 S.W.2d 466,
500 (Tex. Crim. App. 1994).
          Nevertheless, even though the patrol officer’s search of the additional files was
unreasonable, Officer Barnes subsequently obtained a search warrant based primarily
upon Legg’s observations prior to the patrol officer’s instructions to search for
additional pornographic files on the laptop. “When a search warrant is issued on the
basis of an affidavit containing unlawfully obtained information, the evidence seized
under the warrant is admissible only if the warrant clearly could have been issued on
the basis of the untainted information in the affidavit.” Pitonyak v. State, 253 S.W.3d
834, 848 (Tex. App.—Austin 2008, pet. ref’d) (citing Brown v. State, 605 S.W.2d
572, 577 (Tex. Crim. App. 1980)). “If the tainted information was clearly
unnecessary to establish probable cause for the search warrant, then the defendant
could not have been harmed by the inclusion of the tainted information in the
affidavit.” Id. (citing Castillo v. State, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991),
overruled on other grounds, Torres v. State, 182 S.W.3d 899, 901–02 (Tex. Crim.
App. 2005)); see also State v. Bridges, 977 S.W.2d 628, 632 (Tex. App.—Houston
[14th Dist.] 1998, no pet.) (stating that “relevant inquiry into probable cause based
upon a tainted affidavit is to put aside the tainted allegations and determine whether
the independently acquired and lawful information clearly established probable
cause” and that “[i]f the search warrant could have been issued based on the untainted
information in the affidavit, then the search warrant is valid”).  
          Here, even appellant agreed in the trial court that Officer Barnes had probable
cause to obtain a search warrant based upon Legg’s initial observations of his
computer files.


 Setting aside the information in the affidavit related to the HPD
patrol officer’s warrantless search, we hold that the remaining portion of the affidavit
independently provided probable cause for the subsequent search of appellant’s
laptop computer, during which all the video and photographic files containing child
pornography were located.


 See id. 
          We overrule appellant’s second issue.
          In his fourth issue, appellant specifically argues that because Legg violated
Texas Penal Code section 33.02 in opening the “Pedo” file, all of the files should be
excluded from evidence. See Tex. Code Crim. Proc. Ann. art. 38.32(a). Article
38.23(a) provides that “[n]o evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in evidence
against the accused on the trial of any criminal case.” Id. (emphasis added). Section
33.02 of the Texas Penal Code prohibits a person from knowingly accessing a
computer without the “effective consent” of the owner. See Tex. Penal Code Ann.
§ 33.02(a) (Vernon 2003). Appellant asserts that Legg was not authorized to view
any files on his laptop.
          However, as noted above, appellant did not place any limitations on his request
to back up his computer files. In order to fulfill appellant’s request, Legg had to copy
appellant’s files onto a DVD to ultimately load the files “into the store computer
which had the external hard drive connected to it.” Once he saw the suspect “Pedo”
file, Legg had to open it to confirm that it was not illegal. The testimony from Legg
and Bautista supports an implied finding that appellant’s computer files were
accessed in the course of carrying out appellant’s work order. Accordingly, we hold
that the trial court did not err in concluding that Legg did not violate section 33.02. 
          We overrule appellant’s fourth issue. 
          We hold that the trial court did not err in denying appellant’s motion to
suppress evidence.
Conclusion
          We affirm the judgment of the trial court.
            
 

                                                             Terry Jennings
                                                             Justice
 
Panel consists of Justices Jennings, Keyes, and Higley.
Justice Keyes, concurring.
Publish. Tex. R. App. P. 47.4.