**Affirmed and Opinion and Dissenting Opinion filed May 9, 2013.**



In the

# Fourteenth Court of Appeals

### NO. 14-12-00285-CR

### WESLEY JERMONE WRIGHT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1288721**

## D I S S E N T I N G   O P I N I O N

I agree with the majority's analysis of the sufficiency of the evidence but respectfully disagree with its conclusion[1] as to probable cause to support the search

---

[1] The majority opinion states: "Even if the use of the narcotics-detection dog were an unreasonable search that violated the United States Constitution, we would conclude that under the totality of the circumstances the remaining information in the affidavit would clearly establish probable cause that contraband or evidence of a crime would be found at the described location." (Majority at 17).

warrant. I would hold that, after removal of the dog sniff alert from the affidavit, the remaining facts in the affidavit are insufficient to clearly establish probable cause.

The majority has assumed that the dog sniff alert was an unconstitutional search. *See Jardines v. State*, 73 So. 3d 34 (Fla. 2011), *aff'd sub nom., Florida v. Jardines*, —U.S.—, 133 S. Ct. 1409, —L. Ed. 2d— (Mar. 26, 2013). This does not, by itself, invalidate the search warrant if, after removing the facts gained from the illegal search, the remainder of the affidavit clearly establishes probable cause. *See United States v. Karo*, 468 U.S. 705, 720–21 (1984); *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005); *State v. Bridges*, 977 S.W.2d 628, 632 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

The remaining facts in the affidavit do not clearly establish probable cause. While not binding on this court, the affidavit in *Jardines* also contained similar information—an uncorroborated crime stoppers tip that marijuana was being grown at the house, tightly closed blinds, and an air conditioner that kept cycling without stopping, indicating high electrical usage. These facts were not sufficient under Florida law to establish probable cause. *See* 73 So. 3d at 54–55. The sufficiency of the remaining facts in the affidavit was not discussed by the United States Supreme Court in *Florida v. Jardines*.

After removing the dog sniff alert, the affidavit in this case contains very few facts.[2] These facts fall into the following categories:

## 1. Electrical usage

The affiant was told the following by another officer, Sergeant Clark:

---

[2] Much of what the majority characterizes as facts is really the opinion of the officer.

Clark had received information from a credible and reliable source of information (SOI) indicating that the electrical power meter at 519 Irene Dr., Highlands[,] Texas had been by passed, altered in order to display a lower usage reading. . . . The information received further indicated that the power meter had been replaced by the Centerpoint Energy Company in February 2010. Once the meter was replaced the power usage sharply increased to rates roughly five times that of adjacent houses of similar size.

An anonymous tip, alone, is insufficient to establish probable cause, although it can be considered. *Flores v. State*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). And hearsay-upon-hearsay may be utilized to establish probable cause as long as the "underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level." *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983). The affiant established Clark's credentials. But Clark never established the informant's credentials in any meaningful way.

Nothing in the affidavit indicates that this information was ever corroborated,[3] nor does the affidavit establish how the informant knew that the power usage rate was "roughly five times that of adjacent houses of similar size": a conclusion that requires knowing the size of the suspect house, the size of adjacent houses, and normal electrical usage for those adjacent houses. *See id.* at 89 (affidavit must include the underlying circumstances that lead to an informant's conclusion).

In addition, this information appears stale as the date of the affidavit was December 2010, and the meter was replaced in February of 2010, with a "sharp increase" indicating a quick increase. Nothing in the affidavit establishes that the

---

[3] Clark did testify at trial that he obtained Centerpoint records, but as this was not in the affidavit, this corroboration cannot be considered. *Clay v. State*, 391 S.W. 3d 94, 100 n.21 (Tex. Crim. App. 2013). And Clark testified that the usage was substantially higher or extremely high—not five times normal usage.

increase was still present in December. *State v. Griggs*, 352 S.W 3d 297, 303 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (facts stated in an affidavit must be so closely related to the time of the issuance of the warrant such that a finding of probable cause is justified at that time).

The majority cites a number of cases from other jurisdictions concerning electrical usage. I do not disagree that increased electrical usage, combined with other facts, could provide probable cause for a search. However, in this affidavit, the evidence of increased electrical usage was conclusory, stale, and from an anonymous source and, as such, I believe it is insufficient.

### 2. Closed blinds and sporadic sightings

The affidavit contains the following facts: (1) every window in the residence was observed to have the mini-blinds tightly drawn and (2) the affiant spoke with area residents who reported that individuals are only seen at the residence on a sporadic basis.

These are merely "innocent facts." *Cassias v. State*, 719 S.W.2d 585, 589 (Tex. Crim. App. 1986). While the affiant gave his opinion that these facts are consistent with the operation of a "grow house," the pertinent question is the degree of suspicion associated with these noncriminal acts. *See Eisenhauer v. State*, 678 S.W.2d 947, 954 (Tex. Crim. App. 1984) (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991). While consistent with a "grow house," these facts are not unduly suspicious, as many people keep their blinds closed and keep to themselves.

### 3. A felon's registered vehicle at the house

The affidavit also contained the following fact: a vehicle registered to

4

appellant, who had a federal conviction for distribution of methamphetamine, was in the driveway of the house.

Nothing connects appellant's vehicle with any crime and, in fact, nothing connects appellant with any crime. The confidential informant did not contend that appellant was involved with a "grow house" or that a vehicle matching that description was seen transporting any marijuana. The presence of a felon's vehicle in the driveway does not support probable cause, but rather merely supports the identification of appellant and his control of the house. *Cf. Massey v State*, 933 S.W.2d 141, 148–49 (Tex. Crim. App. 1996); *Janecka v State*, 739 S.W.2d 813, 825 (Tex. Crim. App. 1987).

### 4. The totality of the facts does not clearly establish probable cause.

In sum, we have uncorroborated, possibly stale, excessive electrical usage, closed blinds, and sporadic sightings of the residents of the house. This cannot be enough to clearly establish probable cause that a crime is being committed. Because the majority concludes that it is, I dissent.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Frost, Christopher, and Jamison. (Frost, J., majority).
Publish — TEX. R. APP. P. 47.2(b).

5