**Reversed and Remanded and Opinion filed October 25, 2011**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00084-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**HOWARD LEE GRIGGS, Appellee**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1278483**

## OPINION

Appellee Howard Lee Griggs was indicted by a Harris County grand jury for the felony offense of possession of a controlled substance, namely cocaine. The appellee moved to suppress the evidence on the grounds that the officer's affidavit in support of the application for the search warrant that lead to the appellee's arrest and indictment lacked substantial evidence that any contraband or illegal drugs would be found inside the premises to be searched. The trial court granted the motion. The State appeals, contending that the trial court erred by failing to allow for the magistrate's reasonable inferences and show appropriate deference to the magistrate's determination that

probable cause existed based on the fact contained in the affidavit. We reverse and remand.

I

On September 16, 2010, a magistrate found that probable cause existed to support the issuance of a search warrant for a residence located at 4811 Eppes in Houston. The magistrate's determination was based on the affidavit of Houston Police Department Officer B.T. Craig. In relevant part, the affidavit recited the following:

> 4. It is the belief of the affiant, and the affiant hereby charges and accuses that the suspected party, more fully described in paragraph III, are in possession of the above listed controlled substance (Cocaine), having the intent to deliver said dangerous drug to person or persons unknown.

> 5. My belief of the aforesaid statement is based on the following facts: I received information from a confidential informant that crack cocaine was being stored and sold from within the residence located at 4811 Eppes, Houston, Harris County, Texas. Within the past 48 hours, myself, and Officer C. Scales met with a credible and reliable confidential informant for the purpose of making a controlled buy from within the residence located at 4811 Eppes, Houston, Harris County, Texas. The credible and reliable confidential informant has given your affiant information on illegal narcotics trafficking on at least three occasions and on each and every occasion the information has proved to be accurate and has led to the arrest of persons and/or the seizure of illegal narcotics. The credible and reliable confidential informant will remain anonymous for security reasons and will herein be called informant.

> I checked the informant and found that he/she was void of any contraband or money. The informant was given [a] sum of city money and instructed to attempt a purchase of Crack Cocaine from within the residence located at 4811 Eppes, Houston, Harris County, Texas. I drove the informant to the target location. The informant exited my vehicle and walked to the front of the target location. The informant walked out of my sight for approximately two minutes. I observed the informant walk away from the target location. The informant walked back to my vehicle and handed me [a] beige colored chunk substance (Crack Cocaine). The informant was again checked and found to be void of any contraband or money.

The informant stated that he/she walked to the front door of the target location and met with the suspected party, described above in paragraph III, in the front of the location. Informant stated that he/she asked the suspected party for some crack. Informant stated that he/she handed the suspected party the buy money. Informant stated that the suspected party walked into the target location and then returned. Informant stated that the suspected party handed him/her the crack. Informant stated that he/she advised the suspected party that he/she would be back later. Informant stated that the suspected party advised him/her to come back. Informant stated that he/she then walked back to Officer Craig and handed Officer Craig the crack. The informant was again checked and found to be void of any contraband or money.

. . .

Based on the fact that your affiant received information that Crack Cocaine was being stored and sold from within residence located at 4811 Eppes, Houston, Harris County, Texas and based on the fact that the informant was able to make a purchase of Crack Cocaine from the accused within the last 48 hours and based on the fact that the informant was invited to return to make future purchases I believe that there is probable cause to believe that the suspected party is in possession of a quantity of the controlled substance, (Cocaine) for the purpose of sale to person or persons unknown.

In the affidavit, the "suspected party" was identified as "[a] Black male, 48 to 52 years old, 210 to 230 pounds, 5'07" to 5'09" tall, having short length hair, and dark brown complexion, and going by the name "'Howard.'" The affidavit was sworn to on September 16, 2010, and the search warrant based on the affidavit issued that same day. The following day, the appellee was arrested and crack cocaine and other items were seized.

The appellee moved to suppress the evidence, arguing that the affidavit was insufficient to support the issuance of the search warrant. At a hearing on the motion, the trial court granted the motion, concluding that the affidavit lacked any information to support an inference that additional narcotics would be found in the residence. This appeal followed.

## II

### A

A search warrant may not legally issue unless it is based on probable cause. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 1.06. When reviewing a trial court's decision on a motion to suppress, we normally use a bifurcated standard of review. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court's determination of historical fact or questions of mixed fact and law when they involve credibility determinations. *Id.* But, we review de novo the application of law to the facts, or mixed questions that do not turn on the determination of credibility. *Id.* As to search warrants, however, "[b]oth appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause." *State v. McLain,* 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). The issuing magistrate's determination of probable cause will be sustained if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

When reviewing a magistrate's determination, we "'should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made.'" *McLain*, 337 S.W.3d at 271 (quoting *Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)). A "grudging or negative attitude" by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236. Whether the facts alleged in a probable-cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Id.* at 230–31. A search

warrant is supported by probable cause when the facts set out within the "four corners" of the affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State,* 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

B

In its sole issue, the State contends that the trial court failed to accord proper deference to the reasonable inferences the magistrate could have drawn from the facts contained in the affidavit and to the magistrate's determination that probable cause existed to support the issuance of a search warrant. The appellee responds that the trial court correctly determined the search warrant was invalid because the tip from the confidential informant is silent as to when or how the information was obtained, the controlled buy described in the affidavit was not "controlled" because the officers did not perform surveillance on the informant, and the affidavit was insufficient because it did not provide a connection between illegal drugs and the residence. The appellee raises numerous sub-issues within these complaints.

The appellee's arguments invite us to scrutinize discrete parts of the affidavit and find each deficient so that the affidavit as a whole cannot support the magistrate's probable-cause finding. But we are not to analyze the affidavit in a "hyper-technical manner." *McLain*, 337 S.W.3d at 271. The proper inquiry for reviewing courts, including this court and the trial court, is whether, under the totality of the circumstances, there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Id.* at 272; *Rodriguez v. State,* 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus instead on the combined logical force of facts that are in the affidavit. *Rodriguez*, 232 S.W.3d at 62. If in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or

5

marginal cases in this area should be largely determined by the preference to be accorded warrants. *Lopez v. State,* 535 S.W.2d 643, 647 (Tex. Crim. App. 1976) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

Turning to the affidavit itself, it identifies the affiant as Officer B.T. Craig, an officer of the Houston Police Department. It reflects that Craig received information from a confidential informant that crack cocaine was being "stored and sold" from within the residence to be searched. The affidavit also reflects that Craig and another officer met with a credible and reliable confidential informant for the purpose of making a controlled buy from within the residence. Craig avers that this informant is credible and reliable because the informant has given him accurate information on illegal narcotics trafficking on at least three occasions and the information has led to the arrest of persons and the seizure of illegal narcotics.

Describing the controlled buy, Craig averred that he first checked the informant and confirmed that the informant did not possess any contraband or money. He gave the informant an unspecified amount of city money and instructed the informant to attempt to buy crack cocaine from the residence. He drove the informant to the residence, and the informant got out and walked to the front door. Craig was not able to see the informant "for approximately two minutes," after which time he saw the informant walk away from the residence and return to Craig's vehicle. The informant handed Craig a "beige colored chunck substance" believed to be crack cocaine. Craig again checked the informant to confirm the informant had no contraband or money. The substance was later tested and was found to be positive for cocaine.

Craig further avers that the informant told him that the controlled buy took place at the front of the residence. After the informant gave the appellee the buy money, the appellee went inside the residence to retrieve the crack cocaine. The appellee returned with the crack cocaine to complete the transaction. The informant told Craig that the appellee said he would be back later and he "advised" the informant to return as well.

6

Craig averred that he believed he had probable cause to believe the appellee possessed cocaine for sale to others based on the following: (1) he received information that crack cocaine was being stored and sold at the residence located at 4811 Eppes; (2) the informant was able to make a purchase of crack cocaine from the appellee at the residence "within the last 48 hours"; and (3) the informant was invited to return to make future purchases.

Thus, the affidavit reflects the following: Craig received a tip that narcotics were being stored and sold out of a residence at 4811 Eppes. Craig identified the suspected party in charge of or controlling the residence as a Black male going by the name "Howard." Craig investigated the tip by conducting a controlled buy using a credible and reliable confidential informant. Although Craig did not witness the transaction, the informant told Craig that the transaction took place in front of the residence, which Howard entered to retrieve the crack cocaine. Howard also told the informant he would be back later and the informant should return too, presumably to buy more narcotics. The informant returned to Craig with a substance later determined to be cocaine. The controlled buy occurred no more than forty-eight hours before the affidavit was submitted and the search warrant issued. Based on the totality of these facts and the inferences drawn from them, we conclude the affidavit supported the magistrate's probable-cause finding.

As noted above, the appellee challenges the affidavit on numerous grounds. First, the appellee contends the original tip that "crack cocaine was being stored and sold from within the residence located at 4811 Eppes" is stale, because the affidavit fails to state when Craig received the information, when the confidential informant received the information, or when the alleged activity took place. Thus, the appellee urges, it is "impossible to determine whether the tip is from ten years or ten minutes" before the affidavit. *See Sherlock v. State*, 632 S.W.2d 604, 607–08 (Tex. Crim. App. 1982) (holding affidavit was insufficient to support search warrant when it failed to state when the acts forming the basis for a finding of probable cause occurred).

7

Facts stated in an affidavit must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified at that time. *Lockett v. State*, 879 S.W.2d 184, 188–89 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Hafford v. State*, 989 S.W.2d 439, 440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

In this case, although the affidavit does not state when Craig received the information that "crack cocaine was being stored and sold" from within 4811 Eppes, the affidavit does reflect that "[w]ithin the past 48 hours" Craig and another officer met with a confidential informant and conducted the controlled buy. Thus, no more than forty-eight hours elapsed between the controlled buy and the request for and issuance of the warrant on September 16, 2010. Contrary to the appellee's assertion, then, the affidavit does provide a current time frame from which the magistrate could determine that the evidence sought would be at the residence when the warrant issued. *See McLain*, 337 S.W.3d at 273; *State v. Cantu*, 785 S.W.2d 181, 183–84 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd).

The appellee also contends the original tip is invalid because it contains no foundation, detail, or background data on which a court could make a valid probable-cause determination. Alone, the tip that cocaine was being "stored and sold" at the residence is no more than a bare assertion, but the tip combined with the subsequent controlled buy provides facts from which a magistrate could reasonably infer that the sale of cocaine was an ongoing enterprise rather than an isolated incident. This conclusion is further supported by the appellee's statement that he would be back later and the informant should return also. Therefore, the relevant information contained in the affidavit was not stale. *See Hafford*, 989 S.W.2d at 440–41 (holding affidavit not stale when affiant averred informant made controlled buy at defendant's residence and

witnessed other narcotics transactions at defendant's residence between date of controlled buy and date affidavit was submitted three days later); *Lockett*, 879 S.W.2d at 189 (stating that when the affidavit recites facts indicating activity of a protracted and continuous nature, the passage of time becomes less significant).

Although the appellee contends the affidavit provides no indication why the informant should return, and therefore it would be improper to infer that the appellee was encouraging the informant to return to buy additional narcotics, we conclude from the context of the conversation, which occurred immediately after the successful conclusion of the illicit transaction, that a magistrate could reasonably infer that the appellee was encouraging the informant to return to buy more narcotics. *See Rodriguez*, 232 S.W.3d at 61 ("When in doubt, we defer to all reasonable inferences that the magistrate could have made."). Certainly, Officer Craig, to whom the informant recounted the appellee's statements, understood the conversation that way, as one of reasons he believed probable cause existed was that "the informant was invited to return to make future purchases."

Considering all the facts in the affidavit along with reasonable inferences from those facts, we conclude that there was a fair probability that additional illegal drugs continued to be stored and sold at the residence just as the original tip indicated. *See Davis v. State*, 27 S.W.3d 664, 667–68 (Tex. App.—Waco 2000, pet. ref'd). Moreover, although the affidavit did not reflect that the informant had seen additional narcotics in the residence, the magistrate could have inferred that additional narcotics were in the residence from the facts provided. *See Bodin v. State,* 782 S.W.2d 258, 259–60 (Tex. App.—Houston [14th Dist.] 1989), *rev'd on other grounds*, 807 S.W.2d 313 (Tex. Crim. App. 1991) ("That the affidavit in the case before us fails to allege the informant saw methamphetamine in appellant's apartment does not diminish the probable cause supporting the issuance of the search warrant. The information in the affidavit that methamphetamine was purchased in appellant's apartment provides a reasonable basis to infer that methamphetamine was located in the apartment.").

9

The appellee also argues the original tip is not credible because it is impossible to determine the identity of the informant or whether he or she was credible, and the affidavit does not contain any facts describing how the he informant acquired his or her knowledge of the information. *See Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983) ("Hearsay-upon-hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level."). The appellee argues the affidavit referred to two different informants, one who gave the tip ("a confidential informant") and another who later performed the controlled buy ("a credible and reliable confidential informant"). The appellee maintains that a common-sense reading of the affidavit's plain language shows that two informants exist, and "[o]nly a hyper-technical interpretation would assume that there was only one informant."

We do not agree that, based on the plain language of the affidavit, the magistrate could not have reasonably believed there was only one informant. *See Blake v. State*, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding magistrate could have interpreted affidavit in common-sense and realistic manner to reasonably infer that only one informant was involved). But even assuming the appellee's assertion is correct, under the totality-of-circumstances test, an informant's credibility is simply a factor to be considered. *See Gates*, 462 U.S. at 232–33. Here, the affidavit does address the credibility of the informant who participated in the controlled buy, and the appellee does not challenge this informant's credibility and reliability. The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant. *See Ford v. State*, 179 S.W.3d 203, 212 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Sadler v. State*, 905 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

The appellee also contends the controlled buy was not "controlled" because the officers did not maintain surveillance on the informant during the controlled buy and did

not observe the informant enter the residence. *See Harris v. State*, 184 S.W.3d 801, 813 (Tex. App.—Fort Worth 2006), *rev'd on other grounds*, 227 S.W.3d 83 (Tex. Crim. App. 2007) ("Controlled buys that have constituted sufficient corroboration of an informant's statement have been those in which officers either have seen the transaction itself or have, at the very least, seen the informant enter the door of the specific house or apartment and come out with the drugs."). The appellee argues that the informant "could easily have retrieved drugs from behind a bush or from a nearby co-conspirator and then simply lied to officers." We disagree that, given the totality of the circumstances in this case, the officer's failure to keep the informant in view at all times undercuts a finding of probable cause.

Craig averred that when conducting the controlled buy, he first checked the informant to make sure the informant possessed no money or contraband. He then drove the informant to the residence, where the informant got out of the car, walked to the front of the location, and was out of Craig's sight "for approximately two minutes." The informant returned with crack cocaine and described the transaction with the appellee. Craig again checked the informant to confirm the informant possessed no money or contraband. Although it may have been preferable for the officer to maintain constant surveillance in some way, it is not necessary that an officer maintain constant surveillance on an informant during a controlled buy to present a magistrate with sufficient facts to reasonably conclude that the object of the search would probably be on the premises at the time the warrant is executed. *See Williams v. State*, 37 S.W.3d 137, 140–41 (Tex. App.—San Antonio 2001, pet. ref'd) (affirming denial of motion to suppress when informant not searched before or kept in view during buy); *Orlando v. State*, No. 14-06-00912-CR, 2008 WL 1795028, at *4 (Tex. App.—Houston [14th Dist.] Apr. 22, 2008, no pet.) (mem. op., not designated for publication) (noting "constant surveillance" was not required and holding affiant's averment that he maintained "sporadic" surveillance of informant and townhome during controlled buy was sufficient to supporting probable-cause finding). On these facts, the brief interval when Craig could

11

not see the informant does not render the circumstances of the controlled buy in this case insufficient to support a finding of probable cause.

Turning to the appellee's remaining contentions that the drugs were not sufficiently linked to the place to be searched, but instead only to the "suspected party," and that the suspected party is not described in the affidavit, the record reflects otherwise. The physical description and first name of the "suspected party" is set out in the affidavit and he is described as being in charge or control of 4811 Eppes, the place to be searched. The suspected party was present at 4811 Eppes when the informant arrived to purchase narcotics, conversing with the informant at the front door of the residence and retreating into the residence to retrieve the requested cocaine. As such, the suspected party was described in the affidavit and the probability that cocaine would be found inside the residence at 4811 Eppes, not simply on the person of the suspected party, was sufficiently established. *See Washington v. State*, 902 S.W.2d 649, 654 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding informant's tip that appellant was selling crack cocaine from his business, corroborated by controlled buys, was sufficient to support probable-cause finding even though exact location where cocaine was stored was not independently verified by officers).

The appellee argues that "[t]he sale of drugs outside a house can be likened to the discovery of drugs outside a house in the garbage." *See State v. Davila*, 169 S.W.3d 735, 739–40 (Tex. App.—Austin 2005, no pet.) (holding informant's conclusory tip combined with officer's discovery of marijuana in plastic bag inside garbage can set out by the curb for pick up at suspected premises was insufficient to support probable cause, noting that "garbage containers left outside for collection are readily accessible to the public"). But the illegal drugs sold to the informant in this case were retrieved from within the residence, not from the suspected party's person or from a garbage can on the curb. There is no basis to conclude that the facts presented in the affidavit at issue here bear any resemblance to the discovery of narcotics in the garbage at the street curb of a residence.

We conclude the affidavit sufficiently established probable cause justifying the issuance of the warrant and therefore sustain the State's issue.

*  *  *

We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.


/s/  Jeffrey V. Brown
    Justice


Panel consists of Justices Brown, Boyce and McCally.

Publish — TEX. R. APP. P. 47.2(b).