**Opinion issued October 4, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-11-00908-CR**

———————————

**MARCOS GARCIA FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 64780**

## MEMORANDUM OPINION

Appellant, Marcos Garcia Flores, was charged by indictment with two counts of possession with intent to deliver cocaine weighing between 4 and 200

grams, enhanced as a habitual offender.[1]  Following an unsuccessful motion to suppress, appellant pleaded guilty to the offense and the enhancement allegations without an agreed recommendation for punishment.  The trial court assessed punishment at 36 years' confinement on each count, to run concurrently.  In his sole issue on appeal, appellant argues that the trial court erred by denying his motion to suppress.

We affirm.

## Background

On February 16, 2011, Officer M. Christopoulos, with the Freeport Police Department, sought a search warrant to search appellant's apartment from a Brazoria County magistrate judge.  Officer Christopoulos submitted an affidavit in support of the search warrant.  Based on the affidavit, the magistrate judge issued the search warrant.  In the resulting search of appellant's apartment, police obtained about 14 grams of cocaine.

At the motion to suppress hearing, appellant argued that the evidence obtained from the search should be suppressed because of the sufficiency of Officer Christopoulos's affidavit.  The affidavit was based on the personal

---

[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) (providing that cocaine is penalty group one substance), 481.112(a), (d) (providing that manufacturing, delivery, or possession with intent to deliver penalty group one substance between four and 200 grams is first degree felony) (Vernon 2010); TEX. PENAL CODE ANN. § 12.42(c)(1) (Vernon Supp. 2012).

information of Officer Christopoulos as well as information he received from multiple confidential informants.

Officer Christopoulos set up a "controlled buy" with the first informant. He asserted that

> within 48 hours of today's date, February 16, 2011[, I] met with a confidential informant in a secure location. The confidential informant was searched for illegal contraband at which point no illegal contraband was discovered. [I] provided the confidential informant with recorded U.S. currency along with an audio recording device for the investigation. The confidential informant provided information in reference to a subject identified as Adolfo Ramirez, Jr. . . . who is involved in the sales of narcotics including cocaine. [I have] received information in reference to Mr. Ramirez being involved in the sales and usage of narcotics in the past. The confidential informant met with Mr. Ramirez in a public place and provided Mr. Ramirez with recorded U.S. currency. Mr. Ramirez placed a telephone call to an unknown individual named "Oso" in reference to purchasing crack cocaine. [I] conducted surveillance on Mr. Ramirez as Mr. Ramirez traveled to a residence located at 1622 West 7th Street, Freeport, Brazoria County Texas. [I] observed Mr. Ramirez travel to said residence and enter the residence for a short period of time. A few moments later [I] observed Mr. Ramirez exit the residence and approach the vehicle he was operating. Mr. Ramirez traveled away from the residence and soon thereafter met with the confidential informant. [I] observed the confidential informant meet with Mr. Ramirez and Mr. Ramirez provided the confidential informant with a hard white colored rock like substance believed to be crack cocaine. The confidential informant met with [me] in a secure location and provided [me] with the hard white colored white like [*sic*] substance. [I] later field tested the substance with a nartec test kit. The substance revealed a positive analysis for cocaine.

Officer Christopoulos received information regarding appellant from other confidential informants. Specifically, he asserted that he had "received

information from several different sources including reliable and credible confidential informants who state that [appellant] is involved in the sales of narcotics including cocaine."

Finally, Officer Christopoulos received from another confidential informant specific information about appellant actually possessing cocaine. Specifically, he asserted that

> on or about the 15th day of February, 2011 [I] met with a confidential informant. The confidential informant has proven to be reliable and credible by providing information found to be true and correct. The confidential informant has provided [me] with information along with numerous controlled purchases of narcotics including crack cocaine in the past. The controlled purchases have led to numerous search warrants where narcotics have been seized. The confidential informant provided [me] with information stating that subject identified as Marcos Garcia Flores . . . was in possession of a controlled substance, namely crack cocaine on or about the 15th day of February, 2011 while in front of his residence located at 16722 West 7th Street, Freeport, Brazoria County Texas. The confidential informant further provided [me] with information stating that [appellant] was in possession of crack cocaine on several different occasions during the past week.

In addition to the information from the confidential informants, Officer Christopoulos identified information about appellant that was within his own knowledge. Specifically, he asserted that he had conducted surveillance on appellant's residence.

> On [February 14, 2011, I] began conducting surveillance on [appellant's] residence. While conducting surveillance [I] observed several individuals at said residence including [appellant]. [I] observed [appellant] at said residence on more than one occasion.

4

Based on past experience and personal knowledge [I] know[] [appellant's] nickname to be "Oso." . . . [I] reviewed [appellant's] past criminal history and [it] states that [appellant] has been arrested on numerous occasions in the past for Possession of a Controlled Substance.

Based on Officer Christopoulos's affidavit, the magistrate judge issued the warrant and the trial court denied appellant's motion to suppress.

## Standard of Review & Applicable Law

A magistrate judge cannot "issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011) The test for finding probable cause is "whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the warrant, thus, the magistrate's sole concern should be probability." *Rodriguez*, 232 at 60. This is a "flexible and nondemanding standard." *Id.* "The process does not deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981). The magistrate judge performs a totality-of-the-circumstances analysis in determining if probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983).

5

We follow a specific standard of review for determining whether there is probable cause to support the issuance of a search warrant in a motion to suppress. *McLain*, 337 S.W.3d at 271. In determining whether there is probable cause to support the issuance of a search warrant, "the trial court is constrained to the four corners of the affidavit." *Id.* There are no credibility determinations affecting our review. *Id.* "[B]ecause of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search," however, "we apply a highly deferential standard" of review. *Id.*

Under this highly deferential standard of review, we review "the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Rodriguez*, 232 S.W.3d at 61. We do not focus on information that is not in the affidavit but, instead, on "the combined logical force of facts that are in the affidavit." *Id.* at 62. "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Id.* at 61; *see also McLain*, 337 S.W.3d at 272 (critiquing an intermediate appellate court for "focusing on what the officer 'implied' rather than on what the magistrate could have reasonably inferred"). We may not review the affidavit in a hyper-technical manner. *McLain*, 337 S.W.3d at 271.

**Probable Cause for Search Warrant**

In his sole issue, appellant argues that the trial court erred by denying his motion to suppress. Most of appellant's brief is dedicated to looking at certain portions of the affidavit in isolation and arguing that each portion, by itself, could not support the issuance of the search warrant. For example, the affidavit asserts that a confidential informant disclosed to Officer Christopoulos that appellant was observed in possession of crack cocaine in front of his residence the day before the date of the affidavit. Appellant argues that this fact alone is not sufficient to support the issuance of the search warrant. This argument is unavailing. The magistrate judge performs a totality-of-the-circumstances analysis in determining if probable cause exists, and we perform a highly deferential review of this determination. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332 (holding magistrate judge performs totality-of-the-circumstances analysis); *Rodriguez*, 232 S.W.3d at 61 (holding appellate courts perform highly deferential review of magistrate judge's ruling).

Appellant also makes multiple arguments about information that he believes is missing from the affidavit. For example, Officer Christopoulos recites information he received from a confidential informant, who saw appellant in possession of cocaine outside his residence the day before the date of the affidavit. Appellant argues this is insufficient to establish probable cause.

More information is required to make such a determination. Was Appellant selling the crack cocaine he was witnessed with? Did Appellant retrieve the crack cocaine from his home? Did Appellant advise the confidential informant he had crack cocaine in his residence? Without answers to these additional questions, Appellant may have just taken delivery himself with the intent to use the cocaine immediately, Appellant may have retrieved [it] from his vehicle, or Appellant may have been briefly holding the crack cocaine for . . . someone including the confidential informant.

This argument is also unavailing. "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 at 62 (emphasis in original).

Considering the information in the affidavit as a whole, the facts supporting probable cause to issue the warrant are (1) a confidential informant obtained cocaine through a controlled buy with an intermediary that was observed traveling to, going into, and returning from appellant's residence two days before the issuance of the warrant; (2) multiple confidential informants stated that appellant sold cocaine; and (3) another confidential informant had seen appellant in possession of cocaine at his residence the day before the date of the affidavit and on several different occasions within the week prior to the issuance of the search warrant.

Appellant argues there is a conflict in the affidavit that undermines the identity of appellant as the person possessing and selling drugs. In one part of the

affidavit, Officer Christopoulos asserts that, based on past experience and personal knowledge, he knows appellant's nickname is "Oso."  In another part of the affidavit, Officer Christopoulos explains that the intermediary in the controlled buy "placed a telephone call to an unknown individual named 'Oso' in reference to purchasing crack cocaine."  Appellant argues that this alleged conflict creates a credibility issue for the affidavit.  We disagree.

The first statement explains that Officer Christopoulos knows appellant's nickname is Oso.  The second statement explains that the intermediary contacted someone named Oso about buying cocaine.  From these two statements, the magistrate judge could reasonably infer that appellant was the "Oso" involved in the purchase of cocaine.  There is no conflict in these statements.

Appellant also challenges the reliability of the controlled-buy informant and the informant that saw appellant in possession of cocaine outside of appellant's residence the day before the date of the affidavit.  We begin by noting that, while the veracity, reliability, and basis of knowledge of a confidential informant are highly relevant in determining the value of an affidavit, they do not constitute separate inquiries.  *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328.  Instead, they are "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."  *Id.*

9

Officer Christopoulos asserted that the informant who saw appellant in possession of cocaine had "proven to be reliable and credible by providing information found to be true and correct" and had been involved in a number of controlled purchases that "led to numerous search warrants where narcotics have been seized." An assertion in an affidavit that the officer knows a confidential informant and that the confidential informant had provided reliable information in the past is sufficient to establish the reliability of the confidential informant. *Capistran v. State*, 759 S.W.2d 121, 128 (Tex. Crim. App. 1982); *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

For the controlled-buy informant, "[t]he circumstances of a 'controlled buy,' standing alone, may be sufficient to reasonably confirm an informant's information and give probable cause to issue a search warrant." *Sadler v. State*, 905 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Officer Christopoulos asserted that he met with a confidential informant to perform a controlled buy, searched the informant without finding any illegal contraband, and provided the informant with recorded U.S. currency and a recording device. Officer Christopoulos then observed the confidential informant meet with Ramirez in a public place. The informant gave Ramirez the recorded currency. Ramirez called appellant on his cell phone, and left. Officer Christopoulos followed Ramirez and saw him drive to appellant's house, enter the house, leave a short time later, and

return to the confidential informant in a public place. Ramirez provided the informant with a substance that was later identified as cocaine.

Appellant argues that the controlled buy was flawed because Officer Christopoulos did not monitor the confidential informant at all times, leaving the confidential informant with an opportunity to obtain the cocaine from a source other than Ramirez.

> Although it may have been preferable for the officer to maintain constant surveillance in some way, it is not necessary that an officer maintain constant surveillance on an informant during a controlled buy to present a magistrate with sufficient facts to reasonably conclude that the object of the search would probably be on the premises at the time the warrant is executed.

*State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The fact that the confidential informant met with Ramirez in a public place, along with the fact that Ramirez called appellant about purchasing cocaine before going to his residence militate against the possibility that the confidential informant could have obtained the cocaine from another source. Even assuming the facts of the controlled buy were insufficient to establish probable cause for a search warrant, we do not review the reliability of a confidential informant in isolation. *See Gates*, 462 U.S. at 230, 103 S. Ct. at 2328 (holding complaints about veracity, reliability, and basis of knowledge of a confidential informant are one part of the determination of whether there is 'probable cause' to believe that contraband or evidence is located in a particular place); *Rodriguez*, 232 S.W.3d at

11

61 (holding focus of review of affidavit is on "the combined logical force of facts that *are* in the affidavit").

We hold that the cumulative weight of the information in the affidavit supports the trial court's and magistrate judge's determinations that there was probable cause to believe controlled substances would be found within appellant's residence. The trial court did not err by denying the motion to suppress.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. TEX. R. APP. P. 47.2(b).